1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA

4          v.                        97 Cr. 673 (JGK)

5  JAMAL AHMED MOHAMED AL-FADL,
                                     Conference
6              Defendant.

7  ------------------------------x

8                                   New York, N.Y.
                                    November 16, 2012
9                                   12:50 p.m.

10 Before:

11         HON. JOHN G. KOELTL

12                                   District Judge

13

14         APPEARANCES

15

16 PREET BHARARA
        United States Attorney for the
17      Southern District of New York
   EDWARD KIM
18 NICHOLAS LEWIN
        Assistant United States Attorneys

19

20 MARTINE M. BEAMON
        Attorney for Defendant

21

22 IRA LONDON
        Attorney for Defendant

23

24 FOUAD ALSHIEKH
        Interpreter (Arabic)

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1          (Case called; Mr. London not present)

2          MR. LEWIN:  Nick Lewin for the government, joined at

3  counsel table by AUSA Edward Kim.

4          THE COURT:  Good afternoon.

5          MS. BEAMON:  Good afternoon, your Honor.  Martine

6  Beamon from Davis Polk & Wardwell.  I'm on CJA duty today, your

7  Honor, and I have been asked to appear for potential

8  substitution of counsel, which is an issue if I may address

9  when your Honor is ready.

10          THE COURT:  I note that the defendant is present.

11  Please swear the interpreter.

12          (Interpreter sworn)

13          THE COURT:  This matter is on today because the

14  defendant has been represented by Mr. Madden, who has been ill

15  and therefore is no longer in a position to represent his

16  client, so a new lawyer has to be appointed for Mr. Al-Fadl.

17  Ms. Beamon is the Criminal Justice Act attorney on duty today.

18          Ms. Beamon.

19          MS. BEAMON:  Thank you, your Honor.  I have spoken

20  briefly to the defendant in this case, and I have informed him,

21  as I have informed the government, that in 1997, at the time of

22  the indictment in this matter, I was an Assistant United States

23  Attorney in the Southern District of New York.  I did not work

24  on this matter, your Honor.  To my knowledge, I have absolutely

25  no confidential information with respect to this matter.  But I

1   raise it with the Court in an abundance of caution for

2   potential review with the client.

3           A second fact that I think may be relevant for your

4   Honor's consideration is that my law partner at Davis Polk is

5   Frances Bivins.  Ms. Bivins is married now to Judge Kenneth

6   Karas.  Mr. Karas, I understand, was one of the original

7   prosecutors on this matter.  I do know Mr. Karas personally

8   from our service together at the United States Attorney's

9   office.

10          Having only spoken to the defendant very briefly, your

11  Honor, today, I understand that sentencing is imminent and that

12  sentencing may be occurring in the future and that a potential

13  issue that could arise at sentencing is representations that

14  were made to the defendant in connection with his cooperation.

15  Because I have only consulted briefly with the client,

16  potential client, and because I have not done any further due

17  diligence, I raise this for the Court's attention because of my

18  knowledge and relationship with Mr. Karas.

19          I don't know, your Honor, and I have not had an

20  opportunity to consult with counsel on the issue of whether my

21  partnership with Ms. Bivins and my relationship with Mr. Karas

22  would impede my representation in this matter from a conflict

23  perspective.

24          Frankly I thought that it would be worth bringing to

25  your Honor's attention, as it may be that I am not exactly the

1    right person for this particular assignment, because I think

2    the client would want to know that he has someone who is

3    absolutely unaffiliated with the case.  I of course leave that

4    to your Honor.

5          If I have further opportunity, I can consult with

6    counsel about whether or not there is a true conflict.  I'm

7    sorry, your Honor, I just haven't had the opportunity to

8    determine that yet.  I am at least concerned that there may be

9    an issue.

10          I have also been asked by the defendant, your Honor,

11   if I may, in my capacity as representing him for purposes of

12   this appearance, to alert your Honor that he is very anxious to

13   be sentenced.  He has been involved with this matter for 17

14   years and he is very anxious to proceed.  I think he has

15   concerns about whether or not the substitution of counsel could

16   in any way delay sentencing.

17          I raise all of that by way of background to alert your

18   Honor to the status as of today.

19          THE COURT:  Thank you.  First, there is no sentencing

20   date yet set, but I take the defendant's desire to be sentenced

21   promptly and I ask the government what is, for purposes of

22   procedure, the government's position with respect to a prompt

23   sentencing date.

24          MR. LEWIN:  Yes, your Honor.  We are looking at a

25   near-term sentencing.  With that said, I would point out, as

 1    your Honor is well aware, much of the reason for the timing

 2    here relates to activities Mr. Madden was undertaking on behalf

 3    of the client with respect to matters adjunct to the

 4    cooperation itself.

 5         In terms of looking forward, your Honor, there is a

 6    trial scheduled before Judge Kaplan in September, probably

 7    September and October, of 2013.  There is I think a substantial

 8    possibility that Mr. Al-Fadl will be asked to testify.  We

 9    think sentencing can occur very soon after that, but we would

10    ask that sentencing be scheduled for some time after that and

11    note that the defendant's cooperation agreement does indicate

12    that he would consent to adjournments as necessary.

13         THE COURT:  I wanted to get some feel for that with

14    respect to the timing of any continuing cooperation and the

15    government's position with respect to a date for sentence.

16    There may be some disagreement between the government and the

17    defense with respect to the appropriate date for sentence.

18    That would get into the issue of the defendant's cooperation

19    and any expectations under the plea agreement.  I can't resolve

20    that at this point.

21         What I wanted to do was to get some feel for that in

22    order to deal with the issue of representation of the

23    defendant.  Ms. Beamon says there are some issues which she may

24    be able to resolve but can't resolve now and may not be

25    resolved.  The answer seems to me to be plain.

 1        Ms. Beamon has some issues and they are of sufficient

 2  concern that even if they were resolved satisfactorily, we may

 3  be facing a Curcio hearing to assure that the defendant is

 4  aware of any potential conflicts and knowingly waives them.

 5        It is also unnecessary, because Ms. Beamon hasn't

 6  represented Mr. Al-Fadl before, we have a group of excellent

 7  lawyers who are available to represent Mr. Al-Fadl where there

 8  are no questions that there is no conflict at all.  So we can

 9  avoid all of the preliminary issues that Ms. Beamon has by

10  appointing a lawyer with no conflicts or potential conflicts or

11  possible conflicts or issues that have to be explored.

12        We need another conference with another lawyer.  I

13  don't know what the logistics are among the parties.  We could

14  attempt to do that later today or we could attempt to do that

15  next week.

16        THE DEFENDANT:  (Through the interpreter)  Is it

17  possible for me to speak, your Honor?

18        MS. BEAMON:  Your Honor, could I speak to the client

19  for a moment?

20        THE COURT:  Sure.

21        (The defendant and counsel conferred.)

22        THE COURT:  Mr. Kim, why don't you move away so there

23  is no possibility that you overhear what the defendant wants to

24  say to his lawyer.

25        MR. KIM:  Yes, your Honor.

1          MS. BEAMON:  Thank you, your Honor.  I think we are

2     ready the proceed.

3          THE COURT:  All right.

4          MS. BEAMON:  Of course, your Honor, I don't know about

5     the logistics of the Marshals Service, but my client has heard

6     the government's statement today that they will seek his

7     testimony in an upcoming trial, and he has authorized me to

8     tell the Court that there are some immigration issues that are

9     very important to him and to his family that he would very much

10    like to have resolved in advance of that trial.  As a result,

11    your Honor, if it is possible, we would very much like counsel

12    to be appointed today.

13         MR. LEWIN:  Your Honor, we would join in that request.

14    It relates not necessarily to that issue but to the logistical

15    challenges of moving Mr. Al-Fadl.

16         THE COURT:  That's fine.  How about resuming at -- is

17    4 o'clock OK?

18         MR. LEWIN:  Yes, your Honor.

19         MS. BEAMON:  I would suspect, your Honor, that new

20    counsel can be secured to be here by 4 p.m. today, and I will

21    be here, your Honor, at 4:00.

22         THE COURT:  Mr. Fletcher will work on going over the

23    CJA list and calling someone so that they would be here by 3:30

24    so that they can consult with the defendant before the hearing

25    at 4:00 and make sure that there are no conflicts or anything

1    like that and that they also talk to the defendant so that they

2    are aware of what the defendant's desires are.

3           If you could be around, Ms. Beamon, to ease the

4    transition to the lawyer who will be representing Mr. Al-Fadl,

5    that would be useful.

6           MS. BEAMON:  I would be pleased to do that, your

7    Honor.  May I have one more moment with my client?  He has

8    raised another question.

9           THE COURT:  Sure.

10          (The defendant and counsel conferred.)

11          MS. BEAMON:  Thank you, your Honor.  My apologies

12    again.

13          THE COURT:  It's OK.

14          MS. BEAMON:  Your Honor, my client has asked if I

15    might have an ability to consult with your deputy clerk about

16    the other lawyers on the panel who might be available.

17          THE COURT:  Sure.

18          MS. BEAMON:  So that we can try to avoid any conflict

19    issues.

20          THE COURT:  Absolutely.

21          MS. BEAMON:  I would greatly appreciate that, your

22    Honor.

23          THE COURT:  It's not a problem.

24          MS. BEAMON:  I will be available here and I will

25    assist in the transition.  Then we can raise any other issues,

1    your Honor, at the 4 clock conference if anything else comes

2    up.

3            THE COURT:  OK.

4            MS. BEAMON:  Thank you very much, your Honor.  I

5    greatly appreciate it.

6            THE COURT:  Anything else?  Government?

7            MR. LEWIN:  No, your Honor, nothing further.

8            THE COURT:  Good to see you all.  I'll see you all at

9    4 o'clock this afternoon.

10           (Recess)

11           (4:40 p.m.; Ms. Beamon not present)

12           THE COURT:  Good afternoon, your Honor.  Nick Lewin

13   for the government.

14           MR. LONDON:  Good afternoon, your Honor.  Ira London,

15   waiting to be appointed.  I have yet to fill out the financial

16   affidavit with Mr. Al-Fadl.  We need a few minutes to do that,

17   not much more.

18           THE COURT:  That's fine.  Let me swear the interpreter

19   again.

20           (Interpreter sworn)

21           THE CLERK:  Please state your name for the record.

22           THE INTERPRETER:  Fouad Elshiekh.

23           THE COURT:  And I note that the defendant is present.

24           Mr. London, you want a few minutes?

25           MR. LONDON:  A few minutes.  I'll complete the

 1   financial affidavit, fill out a notice of appearance.

 2          THE COURT:  I'll go to the robing room.  In fact, I

 3   have a civil conference.  I'll take the lawyers in the civil

 4   conference.  As soon as you're done here, I'll adjourn the

 5   civil conference.  Criminal cases always take precedence.

 6          (Recess)

 7          THE COURT:  Everyone is here -- the government,

 8   defense counsel, the defendant, and the interpreter -- for

 9   continuation of the conference.

10          This morning I indicated that Mr. Madden, because of

11   health reasons, could no longer represent the defendant.  Now

12   Mr. London is available to represent the defendant.

13          You don't have any conflicts, do you, Mr. London?

14          MR. LONDON:  No, I don't, Judge.

15          THE COURT:  Are you prepared to represent the

16   defendant?

17          MR. LONDON:  I am prepared to.

18          THE COURT:  Great.  I will appoint Mr. London to

19   replace Mr. Madden as counsel for Mr. Al-Fadl.

20          I have reviewed the defendant's financial affidavit.

21   On the basis of the affidavit, the defendant qualifies for the

22   appointment of counsel.

23          Mr. Al-Fadl, do you swear that all of the answers on

24   your financial affidavit are true and correct?

25          THE DEFENDANT:  Yes, I swear that it's all true.

1          THE COURT:  Thank you.

2          I will appoint Mr. London under the Criminal Justice

3     Act to represent the defendant.

4          The next issue is what the schedule should be at this

5     point.

6          MR. LEWIN:  Judge, I proposed, after some

7     conversations with Mr. London, that your Honor consider

8     postponing this discussion to allow Mr. London to review some

9     of the history, to engage in conversations with his client with

10    regard to the timing for sentencing, and to allow the

11    government to also examine a few issues that have been brought

12    to our attention by Mr. London.  I don't mean to suggest Mr.

13    London and I have agreed on that course, only that I think that

14    may be the best by to proceed given the state of affairs, new

15    counsel having been assigned, and the complex history of the

16    case.

17         THE COURT:  Mr. London?

18         MR. LONDON:  I've spoken to Mr. Al-Fadl briefly.  I

19    don't think I've spoken to him longer than 15, 20 minutes.  He

20    has been rather adamant that he wants to proceed to sentence.

21    The ramifications of that are grave for him because that will

22    undoubtedly breach his cooperation agreement.  He has certain

23    strong feelings about this matter.  It is not my position to

24    trample on them or erase them or disregard them.

25         What I think we might do and what I would propose is

1    that we have a status conference a month from now and, to

2    satisfy Mr. Al-Fadl, schedule a sentence date 3 months down the

3    road.  At least 30 days would allow me to become oriented as to

4    the case.  I don't even know what the charges are against Mr.

5    Al-Fadl.

6              THE COURT:  Thank you, Mr. London.

7              MS. BEAMON:  You're welcome, Judge.

8              THE COURT:  Here is what I will do.  Donny, can I have

9    a date in the second week of December.  At this point I'll set

10   the matter down for a status conference on December 14th at

11   2:30.  I'm not going to set a sentencing date yet.  I could set

12   a sentencing date for some period of time at the December 14th

13   conference.

14              In order to sentence the defendant, the defendant

15   should appreciate that what I would need would be a pre-

16   sentence report prepared by the probation department, which

17   takes some time to prepare.  It usually takes months to

18   prepare, so it does take time.  And I would have to set a date

19   for submissions by the parties -- the government, defense

20   counsel -- usually defense counsel first and then the

21   government.  That takes some time.

22              Mr. Al-Fadl raised some questions at the hearing

23   earlier today.  In particular he raised a question about a need

24   for promptness because of some immigration issues.  I don't

25   know what the immigration issues are.  Certainly the government

1    can discuss with Mr. London, and through Mr. London to the

2    defendant, what the immigration issues are.

3         The government had indicated a desire for the

4    defendant's testimony at a trial months and months from now.

5    The government can address any immigration issues that may be

6    out there and should certainly discuss that issue with Mr.

7    London and, through Mr. London, with the defendant.

8         The government plainly wants Mr. Al-Fadl to be here

9    for a trial months and months from now.  What the exact issues

10   are that are on Mr. Al-Fadl's mind in this area is something to

11   be explored with his lawyer and the government.  Mr. London has

12   raised the issue of the defendant's cooperation agreement with

13   the government.  The government has raised the desire for Mr.

14   Al-Fadl's testimony at a trial which is scheduled for -- is it

15   June of 2013?

16         MR. LEWIN:  Your Honor, it is the fall.  Whether it is

17   September or October of 2013, I don't know.

18         THE COURT:  -- the fall of 2013.  What the

19   consequences of that are for the defendant's sentencing are

20   something that the defendant really has to consider with his

21   lawyer and the government.  What the timing of the defendant's

22   sentence is in connection with the cooperation agreement with

23   the government is something that the defendant has to consider

24   in his own best interests.  That's not for me.  That's for the

25   defendant to consider with his counsel and the government.

1          All of these issues can have serious consequences, so

2     it's not something to be done lightly.  It's not something to

3     be done without considering what all of the alternatives are.

4     Is why I'll put the matter down about a month from now to give

5     defense counsel enough time to talk to the government and talk

6     to Mr. Al-Fadl and for Mr. Al-Fadl to consider what is in his

7     best interests with the advice of counsel about what he wants

8     to do and what the consequences are.

9          He is certainly not being hurt by my not setting the

10    date for sentencing today and giving him the opportunity to

11    think about all of this and consider this with his lawyer.  If

12    it were in the defendant's best interests after talking to his

13    lawyer and he wants me to set a date for sentence, it will

14    still take some time, but I can certainly do it at the

15    appropriate time.  But in the defendant's best interests, he

16    has to think of what the various courses are and what the

17    consequences are.

18         Mr. Madden has been ill.  I'm sure that he wasn't able

19    to talk to Mr. Madden about this recently, because of Mr.

20    Madden's illness.  But now he has the opportunity to talk to

21    Mr. London about this.  Mr. London is a very good lawyer, very

22    experienced.  Mr. Al-Fadl should consult with Mr. London,

23    listen to Mr. London about what Mr. London has to say about

24    what the various options are for Mr. Al-Fadl.

25         Ultimately, the decisions in the case are for Mr.

1    Al-Fadl.  The reason that Mr. Al-Fadl is entitled to counsel is

2    precisely so that he can have the assistance of counsel, can

3    consult with counsel, can get counsel's expert advice on the

4    law and what the legal consequences are for the various options

5    that Mr. Al-Fadl has.  That's why I ask Mr. Al-Fadl to please

6    consult with Mr. London, listen to Mr. London about what Mr.

7    London has to say, even though the decisions in the case are

8    ultimately for Mr. Al-Fadl.

9              Mr. London?

10             MR. LONDON:  Judge, I have no idea how to get in

11   contact with Mr. Al-Fadl, whether he is at a secret location or

12   not.  I need some guidance on that.

13             MR. LEWIN:  Your Honor, we will provide that.

14             THE COURT:  The government will provide that.

15             MR. LONDON:  OK.

16             THE COURT:  The government will provide it, and Mr.

17   Al-Fadl can certainly talk to Mr. London directly about that.

18             MR. LONDON:  Mr. Al-Fadl would like me to communicate

19   to the Court and probably more so to the government that his

20   primary concern in all of this is the future of his children.

21   He has six children in the United States, and that is his

22   principal concern.

23             THE COURT:  Government?

24             MR. LEWIN:  We hear the concern.

25             THE COURT:  What?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1              MR. LEWIN:  We understand the concern.  This is a
 2    long-running issue that was being addressed by Mr. Madden and
 3    the government and will continue to be addressed.  I don't have
 4    information here to provide to the Court in terms of the status
 5    of this.  I think this may be an issue that is best resolved
 6    between the government and Mr. Al-Fadl through Mr. London.
 7              THE COURT:  OK.  The government is well aware of the
 8    issue.  What the government has said is that it is an issue
 9    that the government had been discussing with Mr. Madden and
10    will continue to discuss now with Mr. London.
11              MR. LONDON:  Mr. Al-Fadl wants to speak to me about
12    something, Judge.  May I have a moment?
13              THE COURT:  Absolutely.
14              MR. LONDON:  Thank you.
15              (The defendant and counsel conferred.)
16              MR. LONDON:  Mr. Al-Fadl has told me he promised his
17    children that he would speak to the Court today.  I told him
18    that I wished to speak on his behalf.  What he wants the Court
19    to be aware of is that if his children are taken from the
20    United States and returned to the Sudan, they will certainly be
21    killed by the people he has cooperated against.  It is his
22    promise to his children that that will not happen.
23              THE COURT:  Government?
24              MR. LEWIN:  Your Honor, there is not much to be said
25    here.  There is a more than decade-long history, and there are
```

1    lots of things in motion, many of which Mr. Al-Fadl is very

2    much aware of.  Again, I just don't think there is anything to

3    be resolved in this forum.  The United States Attorney's

4    office, the FBI, do not control immigration policy nor

5    immigration decisions.  We have done a lot in this regard.  If

6    your Honor is interested in more details, certainly we can

7    provide that.  I just don't believe that this context is . . .

8         THE COURT:  Let me explain something.  Mr. Al-Fadl,

9    the record shows from what is before me that you have

10   cooperated with the government and the government expects you

11   to continue to cooperate as part of an agreement with the

12   government.  My role is a limited role.  My role as the judge

13   in your case is to ultimately sentence you for what you have

14   pleaded guilty to in this case, in the case that is before me.

15        The government has made it clear that you have been

16   cooperating with them.  The terms of that cooperation will be

17   transparent, clear, in any case in which you testify for the

18   government, what the government has agreed to do for you as

19   part of your cooperation with the government, what the

20   government has done for you.

21        Those are matters between you and the government as

22   part of your cooperation with the government.  They are matters

23   that would be required to be brought to the attention of the

24   Court and anyone else in any case in which you are a witness.

25   Your cooperation is something that would be brought to the

1    attention of this Court in connection with the sentence that I

2    am called to impose in this case.

3            What the details are with respect to the immigration

4    status of your children is really not a matter that is before

5    me.  It plainly is something to be discussed between you, your

6    lawyer, and the government.  The government says that it is

7    plainly something that the government is interested in.  What

8    the status of that is is something that is really not before

9    me, and it is not clear to me that I would have any power to do

10   anything on that subject.

11           My role here at this point is to sentence you at the

12   appropriate time in light of all of the factors that go into

13   sentencing, including any cooperation that you have given to

14   the government, because that's relevant for a variety of

15   factors.

16           I don't control the immigration authorities.  That is

17   something for you to discuss with the government.  What the

18   status of any of those things are is something that would be

19   brought to my attention in connection with any sentence that I

20   impose in this case.

21           THE DEFENDANT:  Your Honor, I did not understand the

22   last sentence.

23           THE COURT:  I have to take all relevant factors into

24   account when I impose sentence.  A relevant factor is a

25   defendant's cooperation as well as any consequences that the

1   defendant's cooperation has had on the defendant.  All of the

2   circumstances of the cooperation and consequences are matters

3   that the parties could bring to my attention in connection with

4   the decision that I have to make as to what the defendant's

5   sentence is.

6          The distinction that I was drawing is I don't control

7   the immigration authorities and it is not my role.  My role is

8   to understand all of the circumstances of the offense, the

9   defendant, the history and characteristics of the defendant,

10  including any cooperation that the defendant has given, when I

11  consider all of those factors in my eventual determination as

12  to what the appropriate sentence for the defendant is in this

13  case.

14         On the issue of immigration, it is something for Mr.

15  Al-Fadl to discuss with Mr. London and for Mr. London to

16  discuss with the government.  The government says it has been a

17  subject of discussion between Mr. Madden and the government, it

18  is a discussion that Mr. London will now pick up.

19         Yes?

20         MR. LEWIN:  Your Honor, lest there be no mistake, Mr.

21  Al-Fadl is an extraordinarily important witness to the

22  government.  Mr. Al-Fadl is a man who has put himself at risk,

23  personal risk, through his cooperation.  Mr. Al-Fadl, through

24  his cooperation with the government, has put his family at

25  risk, and the safety of Mr. Al-Fadl and his family is of the

1   greatest importance to the government.

2          I don't want to send the misimpression that this is

3   not something we take extremely seriously.  We do.  It's

4   something that has been addressed for a long time.  The

5   government has taken many steps with respect to Mr. Al-Fadl's

6   immigration situation, secured them a visa.  His family is

7   still here.  They arrived here in 1996, most of his children.

8          I don't want there to be any misimpression.  The

9   government agrees that Mr. Al-Fadl has put himself and his

10  family at risk through his cooperation and continues to be

11  active in this regard.  I just don't want to make

12  representations to the Court about the state of things where I,

13  frankly, don't have sufficient information.  I think it would

14  better be done with Mr. Al-Fad l through Mr. London in that

15  context.

16          THE COURT:  All right.

17          MR. LONDON:  Your Honor, my last request is that I be

18  given some orientation type documents, like the charging

19  instrument to which Mr. Al-Fadl pleaded, the cooperation

20  agreement, and anything else the government has that they think

21  might give me orientation as to where we are legally in terms

22  of where this case has been and where it is going.

23          THE COURT:  Of course, yes, the government should do

24  that.  Second, you should get Mr. Madden's file.  That file

25  should be turned over to you as successor counsel.  I think his

```
 1    family was taking care of his files, transferring them to

 2    successor counsel.  I would contact his family about getting

 3    his file on Mr. Al-Fadl.

 4              MR. LONDON:  I'm sure the government has a contact

 5    number for him.

 6              MR. LEWIN:  We do, your Honor.  I have been in contact

 7    with Mr. Madden's wife and will certainly facilitate the

 8    contact between Mr. London and Mr. Madden's family.

 9              THE COURT:  OK?

10              MR. LONDON:  Yes, I'll sit down with Mr. Lewin at the

11    conclusion of this proceeding and get the information that I

12    need to proceed.

13              THE COURT:  Anything else?

14              MR. LONDON:  Nothing from me, Judge.  Thank you, your

15    Honor.

16              THE COURT:  Nothing further from the government?

17              MR. LEWIN:  No, your Honor.  Thank you.

18              THE COURT:  There was no application to seal the

19    transcript.

20              MR. LONDON:  I don't know that there should be.

21              MR. LEWIN:  Your Honor, the government doesn't make

22    the motion now.  We are not going to make that motion.  If Mr.

23    London wants to, it's up to him.

24              MR. LONDON:  No, I don't think it needs to be sealed.

25              (Adjourned)
```